1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

06 JAN -6 PM 1:54

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IA

- - - - - - - - - - - - X
UNITED STATES OF AMERICA,  :
                             :
     Plaintiff,       :
                             :
vs.                :  Criminal No. 4:04-cr-182
                             :
TERRY ALLEN GARNETTE,    :  <u>CHANGE OF PLEA TRANSCRIPT</u>
                             :
     Defendant.     :
- - - - - - - - - - - - X

**ORIGINAL**

Courtroom, Fourth Floor
U.S. Courthouse
123 East Walnut Street
Des Moines, Iowa
Tuesday, April 26, 2005
2:35 p.m.

BEFORE:  THE HONORABLE HAROLD D. VIETOR, Senior Judge.

APPEARANCES:

For the Plaintiff:      RICHARD L. RICHARDS, ESQ.
                          Assistant U.S. Attorney
                          U.S. Courthouse Annex
                          110 East Court Avenue
                          Des Moines, Iowa 50309

For the Defendant:      ANGELA L. CAMPBELL, ESQ.
                          Assistant Federal Public Defender
                          Suite 340
                          400 Locust Street
                          Des Moines, Iowa 50309

THERESA KENKEL - CERTIFIED SHORTHAND REPORTER

2

1                           P R O C E E D I N G S

2               (In open court.)

3               THE COURT:  Good afternoon.

4               MR. RICHARDS:  Good afternoon, Your Honor.

5               THE COURT:  This is Criminal No. 04-182, United States

6      of America versus Terry Allen Garnette.

7               Is that how your name is pronounced?

8               THE DEFENDANT:  Yes, sir.

9               THE COURT:  Mr. Garnette, I see you are in jail

10     clothing.  Were you given the opportunity, if you wished, to

11     change into what I'll call civilian clothing before coming

12     here?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  And it's your choice to remain in jail

15     clothing?

16              THE DEFENDANT:  Yes, sir.

17              THE COURT:  Very well.  This case is scheduled for

18     trial I believe next week, and Defendant does appear in court

19     with his counsel, Ms. Campbell.  Mr. Richards represents the

20     Government.

21              I have been presented with a plea agreement under

22     which the Defendant will plead guilty to Count 1 and Count 2 of

23     the indictment.  3 and 4 will be dismissed at time of

24     sentencing.

25              I'm going to mention the major features of this plea

1  agreement.  I want counsel and Mr. Garnette to listen because

2  when I'm done, I'll ask you if I have it right.

3       As I mentioned, the Defendant will plead guilty to

4  Count 1, production of child pornography; and, Count 2,

5  distribution of child pornography; and the Government agrees in

6  exchange for those pleas to dismiss Counts 3 and 4.

7       The statute and the elements of the two crimes are set

8  forth in the plea agreement, and the Government agrees that

9  Defendant will not be charged in the Southern District of Iowa

10  with any other federal criminal offense arising from the

11  investigation that led to this prosecution, except as to any

12  offense committed after the day of the agreement, and to any

13  crime that the Defendant committed that has not been fully

14  disclosed during Defendant's interviews pursuant to proffer or

15  plea agreement.

16       The penalties are as set forth in the plea agreement.

17  It's an agreement under Rule 11(c)(1)(B).  And Defendant

18  understands he'll have no right to withdraw his plea if the

19  sentence imposed or application, if any, of the guidelines is

20  other than what he anticipates.

21       Defendant agrees to pay the required special

22  assessment of $100 per count, or a total of 200, by the time of

23  entry of the guilty plea.

24       Has that assessment been paid?

25       THE DEFENDANT:  Not yet, sir.  We're making

4

1   arrangements for it.

2           THE COURT:  Has it actually been paid yet?

3           THE DEFENDANT:  No, sir.

4           MR. RICHARDS:  We would waive the requirement that it

5   be paid in advance of today's proceeding, Your Honor.

6           THE COURT:  All right.  Defendant understands that

7   under the law I must order restitution for the full amount of

8   the victims' losses.

9           The Defendant agrees to fully cooperate with the

10  Government in the investigation of criminal matters about which

11  he has knowledge.  He agrees to be truthful at all times.

12          If the Defendant fully complies with all the terms of

13  the plea agreement, and the United States Attorney concludes

14  that he has provided substantial assistance in the

15  investigation/the prosecution of one or more other persons who

16  have committed a crime, then the Government will file a motion

17  recommending that the Court depart from whatever sentencing

18  range is advisable under the guidelines; and, furthermore, the

19  agreement covers the possibility of a motion for reduction of

20  sentence under Rule 35(b) being filed if, after sentencing,

21  there is additional substantial assistance in the judgment of

22  the United States Attorney.

23          The Defendant acknowledges that he is entering into

24  this plea agreement and pleading guilty because he is guilty.

25  The agreement does not limit the Government in seeking any civil

1  remedies.   The agreement is the entire agreement between the

2  parties.   Attached to it is Attachment A, a factual stipulation.

3          Have I correctly recited the major features of the

4  plea agreement?

5          MR. RICHARDS:  Yes, you have.

6          MS. CAMPBELL:  Yes, Your Honor.

7          THE COURT:  Have I got it right, Mr. Garnette?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Have you read the plea agreement?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Do you understand it?

12         THE DEFENDANT:  As--yes, sir.

13         THE COURT:  Have you gone over it with Ms. Campbell?

14         THE DEFENDANT:  Yes, sir, I have.

15         THE COURT:  Very well.  Dismissal of Counts 3 and 4 is

16 acceptable to me, and at sentencing, and upon motion of the

17 Government, those counts will be dismissed.

18         There is no agreement as to a specific sentence or a

19 specific guideline range, or anything like that.  The parties

20 are free to make recommendations, of course.  But you

21 understand, sir, that I am free to not follow your

22 recommendation or the Government's recommendation.  Do you

23 understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Very well.  The plea agreement is

1  acceptable to me, and we will proceed further.  If you would

2  please come forward.

3        Mr. Garnette, it is alleged in Count 1 of the

4  indictment in this case that from on or about December of 2003,

5  and continuing to about June 28th of 2004 in the Southern

6  District of Iowa, you employed, used, persuaded, induced,

7  enticed, and coerced a minor, a person under the age of 18

8  years, to engage in sexually explicit conduct, that is the

9  lascivious exhibition of the genitals and pubic area of said

10  minor, for the purpose of producing one or more visual

11  depictions of such conduct, and the visual depictions were

12  produced using materials that had been mailed, shipped, and

13  transported in interstate and foreign commerce.  That is the

14  charge against you in Count 1.  How do you now plead to that?

15  Guilty or--

16        THE DEFENDANT:  Guilty.

17        THE COURT:  Guilty or not guilty?

18        THE DEFENDANT:  Guilty, sir.

19        THE COURT:  And on Count 2 it is alleged that from on

20  or about November 26th of 2001 and continuing thereafter through

21  on or about June 28th, 2004, in the Southern District of Iowa,

22  that you knowingly distributed visual depictions that had been

23  mailed and had been shipped and transported in interstate and

24  foreign commerce, and which contained materials which have been

25  mailed and so shipped and transported by any means, including by

7

1  computer, the producing of such visual depictions having
2  involved the use of one or more minors, that is a person under
3  the age of 18 years, engaging in sexually explicit conduct, that
4  is, actual or simulated sexual intercourse, masturbation,
5  sadistic and masochistic abuse, and the lascivious exhibition of
6  the genitals and pubic area of any person, and such visual
7  depictions are of such conduct.  That is the charge in Count 2.
8  How do you plead to that?  Guilty or not guilty?
9          THE DEFENDANT:  Guilty.
10          THE COURT:  Before I can accept your pleas of guilty
11  to Counts 1 and 2 I am required to ask you a lot of questions
12  because there are a lot of things I'm required to make sure of
13  before I can accept your pleas of guilty.
14          Now, I am required also to receive your answers to my
15  questions under oath.  You understand, of course, that if you
16  willfully lie to me under oath, that itself is a crime, it's
17  called perjury, and you could be prosecuted and punished for
18  that.  Do you understand that?
19          THE DEFENDANT:  Yes, sir.
20          THE COURT:  Very well.  The Clerk of Court will
21  administer to you the oath.
22          (Defendant Garnette was sworn by the clerk.)
23          THE COURT:  Speak the truth not only because you are
24  under oath, and that, of course, is reason enough, but if for
25  any reason you change your mind here today about pleading

8

1   guilty, or if for any reason I refuse to accept your pleas of

2   guilty and you go to trial before a jury on these charges,

3   nobody can tell the jurors that you were here today and said you

4   were guilty, or tell them anything else that you are going to

5   say to me here today.  In other words, nothing you say here

6   today can be used against you as evidence in this case if this

7   case should go to trial.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  The only way you'd ever hear anybody tell

10  a jury what you say here today is if you willfully lie to me and

11  you get charged with and go to trial on a perjury charge.  Do

12  you understand?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Very well.

15             Now, as set forth in the plea agreement, which you

16  tell me you have read and understand, it is--and I'm talking

17  about Count 1 right now.  The law provides that any person who

18  employs, uses, persuades, induces, entices, or coerces any minor

19  to engage in sexually explicit conduct for the purpose of

20  producing any visual depiction of such conduct commits a crime,

21  and that visual depiction was produced using materials that had

22  been mailed, shipped, or transported in interstate or foreign

23  commerce by any means, including by computer.

24             To be guilty of that, sir, the Government would have

25  to prove, if the case went to trial, that about the time alleged

1  in the indictment, and acts committed here in the Southern

2  District and elsewhere, you employed, persuaded, induced,

3  enticed, or coerced or used a minor, a person under the age of

4  18, to engage in sexually explicit conduct, and you did so for

5  the purpose of producing visual depictions of such conduct, and

6  the visual depictions were produced using materials that had

7  been mailed, shipped, or transported in interstate or foreign

8  commerce.  Do you understand that those are the things the

9  Government would have to prove in respect to Count 1?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  And you understand, sir, that by pleading

12  guilty to Count 1 you are admitting that those things are true?

13            THE DEFENDANT:  Yes, sir.

14            THE COURT:  And on Count 2 the law provides that any

15  person who knowingly distributes any visual depiction that has

16  been mailed or has been shipped or transported in interstate or

17  foreign commerce, or which contains materials which have been

18  mailed or so shipped or transported by any means, including by

19  computer, commits a crime if the producing of such visual

20  depiction involves the use of a minor engaging in sexually

21  explicit conduct, and such visual depiction is of such conduct.

22  That's the statute.

23            To prove that, the Government would have to prove that

24  at the times alleged in the indictment the--you knowingly

25  distributed visual depictions that had been mailed, transported,

10

1   or shipped in interstate or foreign commerce, including by

2   computer.  They would have to prove that the depictions

3   distributed were of one or more minors, people under the age of

4   18, engaging in sexually explicit conduct.

5       Three, they'd have to prove that the Defendant knew,

6   that you knew, or had reason to know that the visual depictions

7   distributed by you were of minors engaging in such conduct.

8       And lastly they'd have to prove that the visual

9   depictions of the minors--have to prove the visual depictions

10  are of minors engaging in such conduct.  Do you understand that?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Now, attached to your plea agreement, sir,

13  is a stipulation of facts, and I believe it contains a total of

14  thirteen numbered paragraphs.  The first eight relate to the

15  facts relevant to Count 1, production of child pornography; and

16  paragraphs 9 through 13 relate to Count 2, distribution of child

17  pornography.

18      Did you sign that stipulation of fact?

19      THE DEFENDANT:  Yes, sir, I did.

20      THE COURT:  Did you read it?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  Did you read it carefully?

23      THE DEFENDANT:  Yes, sir, I did.

24      THE COURT:  Is it all true?

25      THE DEFENDANT:  Yes, sir, it is.

1          THE COURT:   Is there anything contained in those

2   stipulation--that stipulation of facts that is the least bit

3   incorrect or untrue?

4          THE DEFENDANT:   I couldn't find anything, sir.

5          THE COURT:   Counsel, should I make any further inquiry

6   into the underlying facts of these two charges?

7          MR. RICHARDS:   Your Honor, with respect to Count 1, I

8   would ask that you make one additional inquiry so that it is

9   clear on the record that the Defendant stipulates and agrees

10  with respect to Count 1 that the visual depictions were produced

11  using materials that had travelled in interstate or foreign

12  commerce, including by use of a computer.

13         THE COURT:   Do you agree with that?

14         THE DEFENDANT:   Yes, Your Honor.

15         THE COURT:   Anything further?

16         MR. RICHARDS:   No, Your Honor.

17         THE COURT:   Ms. Campbell, anything further?

18         MS. CAMPBELL:   No, Your Honor.

19         THE COURT:   There is not a forfeiture count here, but

20  there can be forfeiture, I believe, as part of the penalties;

21  correct?

22         MR. RICHARDS:   That would be correct, Your Honor.   The

23  statute does provide that the visual depictions, which constitute

24  contraband because of their nature, are forfeited to the United

25  States, and any of the materials used to produce such visual

1  depictions, or to receive or distribute such visual depictions,

2  and in this case it's a distribution charge, are likewise

3  forfeited.

4         THE COURT:  Now, I want to make sure you understand

5  what the penalties are provided by law for these two crimes.

6         In regard to Count 1 you are, by pleading guilty,

7  subjecting yourself to imprisonment for not less than 15 years,

8  or more than 30 years; a fine of up to $250,000; or it can be

9  both fine and imprisonment.

10         On Count 2 the term of imprisonment shall be not less

11  than five years, nor more than 20 years; a fine of up to

12  $250,000, or both.  Do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And there are further penalty provisions

15  that I want to explain to you.  In both cases you would be

16  subject to a period of supervised release after your

17  imprisonment ends, and that period of supervised release would

18  be five years on Count 1, and--or not more than five years; on

19  Count 2, not more than three years.  Do you understand that?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  I want to explain supervised release to

22  you.  You are under supervision of a probation officer.  There

23  are lots of rules you have to live by, and if you willfully

24  violate any of those rules, your supervised release can be

25  revoked and you can be sent back to prison for as long as the

13

1  full term of supervised release.   Do you understand that?

2          THE DEFENDANT:   Yes, sir.

3          THE COURT:   And whether you're fined or not, I must

4  specially assess you a total of $200, that's $100 per count, and

5  that goes into the Crime Victims Fund, and that is due and

6  payable immediately on imposition of sentence.   Do you

7  understand that?

8          THE DEFENDANT:   Yes, sir.

9          THE COURT:   And do you understand also that these

10 penalties can be ordered to run what we call consecutively?   In

11 other words, you serve one sentence, and then after you complete

12 that one, you serve the other one.   Do you understand that?

13         THE DEFENDANT:   Yes, sir.

14         THE COURT:   So that could be possibly a total of

15 imprisonment of 50 years.   Do you understand?

16         THE DEFENDANT:   Yes, sir.

17         THE COURT:   And you understand that I am also required

18 to order that you make restitution to the victim or victims of

19 your conduct?

20         THE DEFENDANT:   Yes, sir.

21         THE COURT:   Money you would be required to pay to--I

22 don't know that it's compensation, but you in effect compensate

23 them for the harm done by you.   Do you understand that?

24         THE DEFENDANT:   Yes, sir.

25         THE COURT:   Are you a United States citizen?

14

1            THE DEFENDANT:  Yes, sir, I am.

2            THE COURT:  Are you currently on parole, probation, or

3   supervised release from any sentence imposed on you by any court

4   at any time in the past?

5            THE DEFENDANT:  No, sir, I'm not.

6            THE COURT:  Have the sentencing guidelines been

7   explained to you?

8            THE DEFENDANT:  Somewhat, yes, sir.

9            THE COURT:  Okay.  You understand the guidelines--they

10  used to be mandatory.  They're no longer mandatory, but they

11  still are advisory, and I am required to give serious

12  consideration to the guidelines in determining a sentence.  Now,

13  I can go below it, I can go above it, or I can sentence within

14  the guideline range.  Do you understand that?

15           THE DEFENDANT:  Yes, sir, I do.

16           THE COURT:  But do you understand, as I said, I can go

17  above the guideline range, I can go all the way to the statutory

18  maximum of 30 years and 20 years, if I want to, if I think that

19  is a just sentence?  Do you understand that?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  What do you think the guidelines will show

22  in this case?

23           MR. RICHARDS:  Your Honor, I have done a computation

24  of the guidelines under 2G2.1, which is the applicable guideline

25  for a violation of Section 2251.  I have similarly calculated

1  the guideline range under Count 2, which by cross-reference in

2  that guideline, which is 2G2.2, it cross-references to the

3  production charge in 2G2.1.

4          In any event, Your Honor, based on my initial

5  calculation with the understanding that this gentleman is at

6  Criminal History Category I, with acceptance of responsibility,

7  if that is granted, the range is 121 to 151 months.

8          THE COURT:  You have the same idea or a different idea

9  about what the guideline range might be?

10          MS. CAMPBELL:  That's correct, Your Honor.  I think

11  we're looking at the statutory minimum.

12          THE COURT:  Well, in the end it's my job to figure out

13  and calculate the guideline range, and then, as I say, that

14  range is of considerable influence and importance in my ultimate

15  decision, although it is not absolutely controlling.  I can, as

16  I say, if there's reason to do so, in order to reach what I

17  consider to be a reasonable sentence, impose a sentence lower

18  than the guidelines, or impose a sentence higher than the

19  guidelines.  Do you understand?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  And you understand your lawyer

22  is an Assistant United States Public Defender, and she is

23  paid--she receives a salary from the Court.  You don't have to

24  pay her any fees.  Do you understand that?

25          THE DEFENDANT:  Yes, sir.

1           THE COURT:  Have you fully discussed this case, fully

2    talked about it with Ms. Campbell?

3           THE DEFENDANT:  To the best of my knowledge, sir.

4           THE COURT:  Are you satisfied with the representation

5    and the help that she has given to you?

6           THE DEFENDANT:  Yes, sir, I am.

7           THE COURT:  Now, I want to make sure you realize you

8    do not have to plead guilty.  If you want to, you can stick with

9    your original pleas of not guilty and go to trial before a jury

10   this next week, or the week after--I don't know when it's

11   slotted in--on all four counts of the indictment.  And I want to

12   explain that right to you in some detail.

13          Ms. Campbell would be there in the courtroom with you

14   throughout the trial representing you and defending you at no

15   cost to you, of course.  The trial would be a public trial.

16   Anybody, any relative, any friend, anybody could come and watch

17   the trial from beginning to end.  It would be a trial to a jury

18   of 12 people, and those 12 jurors, not I, would decide in

19   respect to each of the four counts whether you are guilty or not

20   guilty.

21          Now, you and Ms. Campbell would select, along with

22   Mr. Richards, would select the 12 jurors from a larger group of

23   people, about 45 in number, that we call the jury panel.  Now,

24   those folks are not Government officials.  They are ordinary

25   citizens.  They are drawn at random from throughout this part of

1    Iowa.   Basically they represent a cross-section of all the

2    people living in this part of the state.

3            Under the law you are presumed to be innocent of all

4    four charges, and I will tell the jurors that, and I would tell

5    them that they could not find you guilty on any charge unless

6    all 12 of them became convinced beyond a reasonable doubt by the

7    evidence in the case that you really are guilty.

8            Now, the Government would have to try to prove your

9    guilt by evidence, testimony of witnesses.   Each witness for the

10   Government would be required to come into the courtroom and tell

11   the jurors under oath and in your presence what they know about

12   this case, and each one would be subject to being questioned on

13   cross-examination by Ms. Campbell.

14           You would have the same right as the Government has to

15   get a court order, we call it a subpoena, to make any person who

16   you might wish to call as a defense witness come to court and

17   testify on your behalf.

18           You would have the right, if you wished, to take the

19   witness stand yourself and tell the jurors under oath, of

20   course, the facts of this case as you know them.   Or, if you

21   preferred, you could choose to not testify.   And if you chose to

22   not testify, I would tell the jurors, in effect, that they could

23   not hold that against you.   And specifically I would tell them

24   they could not talk about you not testifying, they could not

25   consider your not testifying in any way in deliberating and

1    reaching their verdicts in this case.  And that is true, sir,

2    because you do not have to prove anything, you do not have to

3    say anything.  You do not have to prove that you are innocent.

4    Mr. Richards sitting over there has the job of proving, if he

5    can, and proving it beyond a reasonable doubt, that you are

6    guilty.

7            Now, do you understand you have this right to trial by

8    jury in all the detail that I have just described for you?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Do you have any questions about any of it?

11   Is there any part of it you would like me to clarify or explain

12   more thoroughly than I already have?

13           THE DEFENDANT:  I don't think there is a way to

14   explain it more thoroughly, sir.

15           THE COURT:  Do you understand, sir, by pleading guilty

16   you are forever giving up your right to go to trial before a

17   jury on these four charges?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Because, you see, when you plead guilty,

20   you convict yourself, and then there's nothing left to do but to

21   sentence you, and I do that, and we don't use a jury to

22   sentence.  Do you understand that, sir?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Very well.  Is your decision to plead

25   guilty today your own voluntary decision?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Except for the promises made to you by the

3    Government in the written plea agreement, with that exception

4    has the Government, or Ms. Campbell, or has anybody made any

5    kind of promise to you to get you to plead guilty?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Has anybody promised you for sure what the

8    sentence will be?

9          THE DEFENDANT:  No, sir.

10         THE COURT:  Has anybody threatened you, or used any

11   sort of force or violence against you or any family member to

12   get you to plead guilty?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Okay.  I'm going to ask you a few personal

15   questions.  I do this because I want to make sure that as you

16   stand here today pleading guilty to these two counts, 1 and 2,

17   you do so with a clear head and sound judgment.  In other words,

18   I want to make sure you know what you're doing.

19         How old are you, sir?

20         THE DEFENDANT:  Forty-seven, sir.

21         THE COURT:  How far did you go in school?

22         THE DEFENDANT:  Some college.

23         THE COURT:  All right.  And do you read and write

24   English, and do you understand English when it is spoken?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  Have you fully and clearly understood

2    everything that I have said to you here today?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Is there any part of it that you want me

5    to make more clear?

6          THE DEFENDANT:  I don't see how you could, sir.

7          THE COURT:  Now, during the past 24 hours have you

8    consumed any beer, wine, or any other alcoholic beverage?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  Have you, during the past 24 hours, taken

11    any kind of medication or drugs?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And tell me what you have taken, when you

14    took it, and what the dosage is.

15          THE DEFENDANT:  I take Seroquel twice a day.  The last

16    time was this morning, 100 milligrams.  And I took it last

17    night, 100 milligrams, plus my antidepressant, and I'm not real

18    sure what that is.

19          THE COURT:  When did you take the antidepressant?

20          THE DEFENDANT:  Last night.

21          THE COURT:  Last night?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Do those two medications either alone or

24    in combination with one another affect your ability to think and

25    reason and understand?

1          THE DEFENDANT:  I don't think so, sir.

2          THE COURT:  Okay.  You say you don't think so.  Are

3   you sure of that?

4          THE DEFENDANT:  I'm positive, sir.

5          THE COURT:  And I understand that you have undergone

6   some evaluation for mental disorders or diseases; right?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  And to the best of your understanding,

9   what mental conditions do you have?

10         THE DEFENDANT:  Depression and obsessive compulsive

11  disorder or addictions.

12         THE COURT:  Okay.  Anything else that you know of?

13         THE DEFENDANT:  I've been told possibly schizophrenic

14  affective.

15         THE COURT:  Bipolar?

16         THE DEFENDANT:  Bipolar has been thrown out there,

17  sir, but nobody has been definite.

18         THE COURT:  I understand that the Defendant did, after

19  this prosecution was commenced, undergo a mental evaluation?

20         MS. CAMPBELL:  Yes, Your Honor.

21         THE COURT:  Would you state for the record what

22  evaluation he underwent, where, and what the bottom line report

23  was on it?

24         MS. CAMPBELL:  He underwent a mental evaluation

25  through the Bureau of Prisons, Your Honor, on the defense's

1  request.  It was completed in Waseca, Minnesota, by Sheila

2  Brandt, a forensic psychologist in that facility.  And the

3  result of the evaluation--it was for competency--was that the

4  Defendant was fully competent to stand trial.  She did have

5  several diagnoses, dysthymic disorder--she ruled out psychotic

6  disorder--pedophilia, cannabis dependency, amphetamine

7  dependency, psychological dependency.

8          THE COURT:  All right.  I'm going to ask you this:  Is

9  there anything about your mental condition that affects your

10  ability to think, reason, and understand as you are standing

11  here today?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  You know what you're doing?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  You know what we are all doing?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  All right.  Do you still want to plead

18  guilty to Count 1 and Count 2?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Counsel, are there any further questions

21  you believe I should ask the Defendant?

22          MR. RICHARDS:  No, Your Honor.

23          MS. CAMPBELL:  No, Your Honor.

24          THE COURT:  Do you know of any reason, Ms. Campbell,

25  why your client should not enter this plea of guilty?

1          MS. CAMPBELL:   No, Your Honor.

2          THE COURT:   I accept the pleas.   I find the pleas to

3   Count 1 and 2 are voluntary, they're not the result of any

4   force, threats, or promises, other than the plea agreement

5   promises.   The Defendant is fully aware of the maximum and

6   minimum punishment provided by law; he knows about his right to

7   trial by jury.   I find that he has voluntarily given up his

8   right to trial by jury, and I find that there is a factual basis

9   for the two charges in Counts 1 and 2, and for his pleas of

10  guilty to those counts.

11         The Defendant will remain in detention pending

12  imposition of sentence.

13         The presentence report should be ready by July 11.

14  Get it, go over it with your client, Ms. Campbell.   Of course,

15  if there are any objections by either side, express those

16  objections in writing to the presentence investigator within 15

17  days, or by July 25.   If there are objections, you may have a

18  conference with the presentence investigator to try to iron

19  out the differences.   I should get the report about August 8,

20  along with any outstanding objections, and sentence can be

21  imposed anytime mid-August or later.   Let me look at my

22  schedule.

23         Well, why don't we sentence on August 19.   That's a

24  Friday.   Is that acceptable?

25         MS. CAMPBELL:   Yes, Your Honor.

24

1    MR. RICHARDS:  Yes, Your Honor.

2    THE COURT:  At 10 a.m.  Is that acceptable?

3    MS. CAMPBELL:  Yes, Your Honor.

4    MR. RICHARDS:  Yes, Your Honor.

5    THE COURT:  All right.  That's when we'll do it.

6    Anything else?

7    MS. CAMPBELL:  No, Your Honor.

8    MR. RICHARDS:  Excuse me, Your Honor.  I will just

9  merely say with respect to the portion of the Grand Jury's

10  indictment, which is prior to the decision in Booker and Fanfan,

11  alleging aggravating factors relevant to all four counts, those

12  aggravating factors are now superfluous and we would dismiss

13  those.  They begin on page 3 of the indictment, Your Honor, and

14  our plea agreement doesn't specify that we would be asking that

15  those be dismissed in light of the decision in Booker and

16  Fanfan.

17    THE COURT:  Page 3 of the indictment?

18    MR. RICHARDS:  Yes, Your Honor.  It's at the bottom of

19  the page.

20    THE COURT:  Oh, I see.  I see.  Very well.  That's

21  granted, and the aggravating factors portion of the indictment

22  are stricken.

23    Anything further?

24    MR. RICHARDS:  No, Your Honor.

25    MS. CAMPBELL:  No, Your Honor.

25

1          THE COURT:  Okay.  See you in August.

2          MR. RICHARDS:  Thank you, Your Honor.

3          (Proceedings concluded at 3:15 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

C E R T I F I C A T E

I, the undersigned, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that I acted as the official court reporter at the hearing in the above-entitled matter at the time and place indicated;

That I took in shorthand all of the proceedings had at the said time and place and that said shorthand notes were reduced to typewriting under my direction and supervision, and that the foregoing typewritten pages are a full and complete transcript of the shorthand notes so taken.

Dated at Des Moines, Iowa, this 6th day of January, 2005.


CERTIFIED SHORTHAND REPORTER